FILED

2023 May-01  PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

**MICHAEL TUCKER,**
    Plaintiff,

v.

    **Case No. 2:21-cv-1706-CLM**

**OSCAR MIKE, INC.,**
    Defendant.

### <u>MEMORANDUM OPINION</u>

Plaintiff Michael Tucker ("Tucker") sued Defendant Oscar Mike, Inc. ("Oscar Mike") alleging that Oscar Mike misclassified him as an "exempt" employee under the FLSA, and failed to pay legally required overtime wages. But because Tucker's job is covered by the Motor Carrier Act Exemption to the FLSA, the court finds that Oscar Mike did not misclassify Tucker. So the court **GRANTS** Oscar Mike's motion for summary judgment.

### I.    BACKGROUND

The facts in this case are largely undisputed.

Tucker filed this lawsuit against Oscar Mike alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Tucker says that Oscar Mike misclassified him as "exempt" from the FLSA's overtime requirements, and therefore failed to pay him overtime wages. Oscar Mike contends that Tucker's job was covered by the Motor Carrier Act Exemption to the FLSA, and thus, overtime pay was not required.

Oscar Mike is a transportation company that provides local, intrastate, and interstate line haul services. In other words, Oscar Mike uses trucks—big trucks—to transport freight from one location to another. Oscar Mike's primary business is providing line haul services for FedEx Ground. The parties agree that Oscar Mike is a Contracted Service Provider, and operates under the FedEx Ground Department of Transportation ("DOT") operating authority. All Oscar Mike vehicles have FedEx Ground DOT registration numbers,

maintain a current inspection completed by a DOT-approved inspector, and are subject to inspection by the DOT.

Oscar Mike employs mechanics whose primary duty is to perform vehicle maintenance jobs, including repairing Oscar Mike's commercial vehicles at Oscar Mike's repair shop in Alabama, and out on the road in Alabama and other states.

Tucker worked at Oscar Mike as a Diesel Mechanic from September 2020 to December 2021. Tucker alleges that during this time, he regularly worked more than forty hours per week. Tucker was paid a salary, and never received extra pay when he worked more than forty hours in a week.

Tucker says his "main job" was to perform maintenance on company vehicles that broke down while out on a route. He also performed maintenance and repairs on company vehicles in Oscar Mike's shop. For one week per month, Oscar Mike required Tucker to be "on call" for after-hours emergency repairs on Oscar Mike trucks. Tucker was typically called in two to three times during each "on call" week. When called into work after hours, Tucker would first stop at Oscar Mike's shop in Birmingham, Alabama to pick up tools and supplies. He would then drive to the location of the broken-down truck. Tucker testified that throughout his employment at Oscar Mike, he traveled to broken-down trucks in Alabama, Tennessee, and Georgia. And the parties agree that every truck Tucker worked on or repaired weighed <u>over</u> 10,000 pounds.

To get to repair sites out on the road, Tucker would drive either his personal vehicle (a Ford Mustang), the company's passenger truck (a Ford F250), or the company's passenger vehicle (a Honda CRV). All of these vehicles weigh <u>under</u> 10,000 pounds.

The parties agree on everything that has been said so far. And briefing has revealed that the parties also agree that Oscar Mike satisfies all elements of the Motor Carrier Act Exemption to the FMLA. Thus, the disagreement in this case is narrow: Tucker argues that he should be removed from the jurisdiction of the DOT by virtue of the "Small Vehicle Exception" to the Motor Carrier Act Exemption. And Oscar Mike says the "Small Vehicle Exception" does not apply. Deciding who is correct is the primary question before the court.

Tucker initially sought to bring this case as a collective action,[1] and asked the court to conditionally certify an opt-in class. But the court denied that motion. So Tucker's case proceeds, but only with his individual claims. *Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018) ("Generally, when conditional certification of a collective action is denied . . . the matter proceeds on the named plaintiff's individual claims") (citation omitted).

While the motion for conditional certification was pending, Oscar Mike filed a motion for summary judgment. That motion is now before the court.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Id.* at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. But a party cannot defeat summary judgment by relying on conclusory allegations. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

---

[1] The FLSA authorizes individual claims, as well as "collective actions" against employers. *See* 29 U.S.C. § 216(b). Collective actions allow a plaintiff to assert claims on behalf of other similarly situated employees. *See id.*

3

## III.   DISCUSSION

The FLSA requires employers to pay overtime wages to covered employees who work more than forty hours in a workweek. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1138 (2018) (citing 29 U.S.C. § 207(a)). But the FLSA also contains exemptions. Oscar Mike asserts that the Motor Carrier Act Exemption to the FLSA covers Tucker's job, and thus, the company was not required to pay overtime compensation. Tucker says even if that's true, the "Small Vehicle Exception" to the Motor Carrier Act Exemption brings his position back under the FMLA, entitling him to overtime pay.

This discussion is divided into two parts. First, the court addresses whether the Motor Carrier Act Exemption applies, and removes Tucker's job from coverage under the FLSA. Second, the court addresses whether the Small Vehicle Exception applies, and brings Tucker's job back under the FLSA.

### A.   Motor Carrier Act Exemption

As explained above, the FLSA requires employers to pay overtime wages to covered employees who work more than forty hours in a workweek. *Encino Motorcars*, 138 S. Ct. at 1138 (citing 29 U.S.C. § 207(a)). But the FLSA also contains exemptions. One of those exemptions is the "Motor Carrier Act Exemption" ("MCE"). *See* 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502(b); 29 C.F.R. 782.2(a).

Section 213(b) of the FLSA expressly provides that the overtime wage requirements specified in Section 207(a):

> shall not apply with respect to – (1) any employee with respect to whom the Secretary of *Transportation* has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [*i.e.*, the Motor Carrier Act of 1985].

29 U.S.C. § 213(b)(1) (emphasis added). This section of the FLSA is called the "Motor Carrier Act Exemption" to the FLSA. It exempts employees whose maximum hours would otherwise be regulated by the Secretary of *Labor* under the FLSA from the recovery of overtime wages under the FLSA.

Congress created this exemption to eliminate any conflict between the jurisdiction exercised by the Department of Labor over the FLSA, and the mutually exclusive jurisdiction exercised by the DOT over the Motor Carrier Act ("MCA"). *Walters v. Am. Coach Lines of Miami, Inc.*, 576 F.3d 1221, 1226 (11th Cir. 2009) (citation omitted). "Because of this congressional intent, the Secretary of Transportation does not have to exercise the authority granted to him by the MCA for the motor carrier exemption to be applicable." *Id.* (citation omitted). Instead, his power to regular under the MCA merely needs to cover a particular group of employees. *Id.* (citation omitted).

Federal regulations explain when this exception applies. *See* 29 C.F.R. § 782.2. The applicability of the MCE "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." *Walters*, 575 F.3d at 1227 (citing 29 C.F.R. § 782.2(a)). Thus, there are two requirements for an employee to be subject to the MCE. *Id.* First, the employee's business must be subject to the Secretary of Transportation's jurisdiction under the MCA. *Walters*, 575 F.3d at 1227 (citing *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181–82 (11th Cir. 1991) (per curiam)). Second, the employee's business-related activities must "directly affect[ ] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the" MCA. *Walters*, 575 F.3d at 1227 (citing *Baez*, 983 F.3d at 182); *see also* 29 C.F.R. § 782.2(a).

The Eleventh Circuit instructs courts to "construe FLSA exemptions narrowly against the employer." *Walters*, 575 F.3d at 1226 (citation omitted). And the burden of proving that the Motor Carrier Act Exemption to the FLSA applies rests with the employer. *Id.* (citing *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (*per curiam*)). Thus, to show that the MCE applies, Oscar Mike must establish that (1) Oscar Mike is subject to the jurisdiction of the Secretary of Transportation, and (2) Tucker duties directly affect the safety of operation of motor vehicles in the transportation on the public highways of property in interstate or foreign commerce. *Walters*, 575 F.3d at 1227. The court now considers both.

1. *Oscar Mike is a motor carrier subject to the jurisdiction of the Department of Transportation.*

To satisfy the first requirement of the MCE, Oscar Mike must establish that it is subject to the jurisdiction of the Secretary of Transportation. 29 C.F.R. § 782.2(a).

The parties agree that Oscar Mike is a "motor carrier" subject to the jurisdiction of the Department of Transportation. (*See* Doc. 32, p. 12; Doc. 28, p. 14). So the court will proceed to the second requirement.

2. *Tucker's duties directly affected the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate commerce.*

To satisfy the second requirement of the MCE, Oscar Mike must show that Tucker's "work involve[d] engagement in activities consisting wholly or in part of a class of work" defined: "(i) [a]s that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce . . ." 29 C.F.R. 782.2(b)(2); *see also Altare v. Vertical Reality MFG, Inc.*, No. 1:19-cv-21496, 2021 WL 1723581, at *6 (S.D. Fla. Apr. 30, 2021) (example of district court applying this same standard for the second prong).

The relevant federal regulations define a "mechanic" as:

> an employee who is employed by a carrier subject to the Secretary's jurisdiction under section 204 of the Motor Carrier Act and *whose duty is to keep motor vehicles operated in interstate or foreign commerce by his employer in a good and safe working condition.*

29 C.F.R.§ 782.6 (emphasis added).

Here, the parties agree that Tucker qualifies as a "mechanic" for purposes of the Motor Carrier Act. (*See* Doc. 32, p. 12; Doc. 28, p. 16). And the parties agree that Tucker's "main job" was to perform maintenance on DOT-registered trucks that broke down while out on a route. (Doc. 32, p. 4; *see also* Doc. 32, p. 5). Thus, Tucker's duties directly affected the safety of operation of

6

motor vehicles in the transportation on the public highways of property in interstate commerce.

———

Because both prongs are satisfied, the court finds that Oscar Mike has met its burden of proving that the Motor Carrier Act Exemption to the FLSA applies. The remaining and more controversial issue is whether the "Small Vehicle Exemption" to the MCE applies.

## B.    "Small Vehicle Exception" to Motor Carrier Act

As explained above, Oscar Mike has met its burden of showing that the MCE applies. But Tucker argues that even so, he is entitled to overtime compensation under the FLSA because of the "Small Vehicle Exception" ("SVE") to the MCE—in other words, the exception to the exception. If the SVE applies, Tucker is brought back under the FLSA. *See* Pub. L. 110-244, § 306(c).

First, some background: Congress changed the scope of the Motor Carrier Act Exemption in August 2005 by enacting the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), *see* SAFETEA-LU, Pub. L. N. 109-59, §4142(a), 119 Stat. 1144, 1747 (2005"), and then later by enacting the SAFETEA-LU Technical Corrections Act of 2008, *see* Pub. L. No. 110-244, 122 Stat. 1572, 1620 (2008); *see also Minor v. Cent. Forest Prods., Inc.*, No. 3:19-cv-1631-CLS, 2021 WL 1102437, at *15 (N.D. Ala. Mar. 23, 2021). The 2008 statute created the so-called "Small Vehicle Exception" to the Motor Carrier Act Exemption. It applies to those:

> (1) who [are] employed by a motor carrier . . .
>
> (2) whose work, in whole or in part, is defined—
>
>> (A) as that of a driver, driver's helper, loader, or mechanic; and
>>
>> (B) as affecting the safety of operations of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . ;
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

7

Pub. L. 110-244, § 306(c).

So to summarize: under the SVE, the MCE "does not apply to a . . . mechanic in any workweek in which their work affects the safe, interstate operation of motor vehicles weighing 10,000 pounds or less." *Santana v. Lykes Exclusive, LP*, No. 12-cv-22013, 2013 WL 1001850, at *3 (S.D. Fla. Mar. 13, 2013) (citing U.S. Department of Labor—Wage and Hour Division, Field Assistance Bulletin: No. 2010-2, Exhibit B49).

Tucker says he is covered by the SVE because he *drove* vehicles weighing under 10,000 pounds. Specifically, Tucker asserts that when repairing a truck that had broken down out on the road, Tucker was required to travel to the truck's location to make the repair. And to get to these locations, Tucker drove either his personal vehicle (a Ford Mustang), the company's passenger truck (a Ford F250), or the company's passenger vehicle (a Honda CRV) (collectively, "lightweight vehicles"). All of these vehicles weigh under 10,000 pounds.

The record backs up Tucker's facts. The record indicates that Tucker would sometimes stop by Oscar Mike's shop in Birmingham to pick up tools and supplies, and then drive to the location of the broken-down truck, which could be in Alabama or across state lines. Sometimes Tucker had to purchase and transport parts to install in the large trucks. There were also times when Tucker left Oscar Mike's shop and other mechanics rode with him, sometimes across state lines. Tucker was also at times required to transport the driver of the broken-down truck, and occasionally this required travel across state lines with the truck driver as the passenger. For these reasons, Tucker asserts that he used lightweight vehicles to transport tools and other parts for purposes related to the transportation of goods in interstate commerce.

The problem for Tucker is that he never "perform[ed] duties on motor vehicles weighing 10,000 pounds or less." *See* Pub. L. 110-244, § 306(c)(3). And his repair work did not "affect[ ] the safety of operations of" the lightweight vehicles. *Id.* at § 306(c)(2). This is true whether Tucker is classified as a "mechanic," or a "driver" of the lightweight vehicles.

The parties agree that every truck Tucker worked on or repaired weighed over 10,000 pounds. (Doc. 32, p. 6; *see also* Doc. 32, p. 3). Nothing in the record suggests that Tucker performed *any* work that "affect[ed] the safety of operations" of the lightweight vehicles. He simply drove them.

8

At all times—whether driving to a repair site or conducting a repair—Tucker was "perform[ing] duties" on vehicles weighing 10,000 pounds or more.

And as this court previously observed, "[t]here is no binding precedent that directs this court on whether plaintiff's trips to pick up supplies for his mechanical work for defendants makes him a driver of a small vehicle in interstate commerce as required for the Small Vehicle Exception." *Minor v. Cent. Forest Prods., Inc.*, No. 3:19-cv-1631-CLS, 2021 WL 1102437, at *16 (N.D. Ala. Mar. 23, 2021). District courts have decided the question differently. *Compare, e.g.*, *Garcia v. Western Waste Services, Inc.*, 969 F. Supp. 2d 1252, 1261 (D. Idaho 2013) (holding that the plaintiff's act of driving a small vehicle solely to repair company vehicles did not qualify as interstate commerce) with *Pye v. Oil States Energy Services, LLC*, 233 F. Supp. 3d 541, 554-56 (W.D. Tex. 2017) (finding that "transporting necessary tools and equipment to/from customers' well sites and [transporting employees] between the hotel/man camp and the well site" with small vehicles constituted work performance).

In a case with similar facts, this court held that a plaintiff's use of small vehicles to repair larger vehicles and transport supplies for his employer did not bring the employee under the purview of the SVE. *See Minor*, 2021 WL 1102437. In *Minor*, the court relied on *Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1261 (D. Idaho 2013), which also held that a plaintiff's use of small vehicles to repair larger vehicles did not bring his job under the SVE. There is no reason to depart from this court's analysis in *Minor*.

Nothing in the record allows a factfinder to conclude that Tucker's work *affected the safe, interstate operation* of motor vehicles weighing 10,000 pounds or less. So the court finds that the Small Vehicle Exception to the Motor Carrier Act Exemption does not apply. Tucker's job was therefore subject to the MCE, and he was not entitled to claim overtime pay under the FLSA.

## IV.    CONCLUSION

For the reasons explained above, the court **GRANTS** Oscar Mike's motion for summary judgment (doc. 26). The court will enter a separate order that carries out this ruling, and **DISMISSES WITH PREJUDICE** all claims against Oscar Mike.

**DONE** on May 1, 2023.


**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE